**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**      **CASE NO.: 3:08-cr-315-J32-MCR**

**vs.**

**CHASE E. KEEFOVER**
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, **CHASE E. KEEFOVER** (the "Defendant"), by and through undersigned counsel, hereby files this Sentencing Memorandum, in which the Defendant includes his objections to the Pre Sentence Investigation Report (PSR), and requests this Court to impose a probationary sentence. In support of his request, the Defendant states as follows:

**I.     Introduction**

The Defendant is scheduled for sentencing before this Court on January, 28, 2009 at 11:00 a.m. First, this memorandum will set forth the underlying facts and prior proceedings in this prosecution, as they apply to the Defendant. Second, this memorandum will briefly discuss the Supreme Court's holding in _United States v. Booker_ and its application to Mr. Keefover's sentencing. Finally, this memorandum will outline the rationale for the imposition of a probationary sentence, considering the factors set forth at 18 U.S.C. § 3553(a), as well as the advisory guideline range (including any specific objections to the advisory sentencing guideline calculations contained in the PSR) and other applicable factors.

The information contained within the section of the PSR entitled "Offense Conduct" is essentially without dispute.

The Defendant would offer this information, to help the Court place the general information contained in the PSR in the appropriate context, and to assist in the Court's evaluation of the propriety of the probationary sentence that the Defendant seeks.

## II.    Factual and Procedural Background

While attending high school, both before and shortly after his 18th birthday, Mr. Keefover used the internet file sharing service known as "KAZAA" to download files to a Dell laptop computer he had received from his parents in 2004, when he was 15 years old. The downloaded files included sexually explicit photos of adult and minor females.  While the Defendant admits he downloaded child pornography, there is no indication that he was trying to do anything other than download material that was age-appropriate, both physically and emotionally.

"KAZAA" and other similar file sharing sites provide lists of files with very brief descriptions, which, when a download is requested, are retrieved from other computers connected to the file sharing site.  These are "blind downloads"; that is, the files cannot be viewed before being downloaded.  Download requests are based solely on the brief description given, which are often inaccurate.

After completing high school, Mr. Keefover joined the United States Navy.  Upon becoming stationed in Jacksonville, he retrieved his computer from his home in Arkansas and brought it aboard the U.S.S. Halyburton.  He had not viewed any of the photos referenced in the Indictment since downloading them, and *he never downloaded any*

*additional images, nor did he ever distribute, transfer or reproduce any pornographic images of any type, whatsoever.*  It appears that these images remained on Mr. Keefover's hard drive as forgotten files.

While Mr. Keefover was on leave, shipmates found his computer and viewed the files.  The computer was turned over to his commanding officer.  When confronted with the images, Mr. Keefover admitted his offense conduct and cooperated with the investigation.

## III.   *United States v. Booker* and 18 U.S.C. Section 3553(a)

*Booker*[1] has rendered the United States Sentencing Guidelines "effectively advisory".  Sentencing courts are still required to consider a defendant's sentencing guideline range, but may "tailor the sentence in light of other statutory concerns as well." *Id.* (*citing* 18 U.S.C. § 3553 (a)).

The effect of *Booker* is that federal district courts must consider the seven factors set forth by Section 3553(a) in determining a sentence; that is:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed-

    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)   to afford adequate deterrence to criminal conduct;

    (C)   to protect the public from further crimes of the defendant; and

    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

1   *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

(3)     the kinds of sentences available;

(4)     the applicable Sentencing Guidelines;

(5)     any pertinent Sentencing Guidelines policy statement

(6)     the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victim of the offense.

Section 3553(a) embodies the "parsimony principle," which requires that sentences be only as long as necessary to serve the purposes listed in section 3553(a)(2), This provision "is not just another 'factor' to be considered along with others set forth in Section 3553(a) . . . it sets an independent limit on the sentence a court may impose."  David L. McColgin & Brett G. Sweitzer, Grid & Bear It, 29 Champion 50, 50 (2005); *see also United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006) ("[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2).") (quoting 18 U.S.C. § 3553(a)); Richard S. Frase, Punishment Purposes, 58 Stan. L. Rev. 67, 83 (2005) (stating that "the structure of section 3553(a)," which lists the parsimony principle first, suggests that this principle "sets overall limits on the crime-control and other purposes which follow"); *see also generally* ABA STANDARDS OF CRIMINAL JUSTICE § 18-2.4 (sentences "imposed, taking into account the gravity of the offense, should be no more than necessary to achieve the social purposes for which they are authorized").  Sentencing under Section 3553(a) therefore requires the Court to start with the minimum sentence permissible and add only so much additional punishment, if any, as necessary to comply with the purposes of Section 3553(a).  As discussed below,

application of the relevant Section 3553(a) factors to the facts of this case establishes that a period of incarceration of less than 10 years is sufficient to comply with the purpose of Section 3553.

## IV.    The Application of 18 U.S.C. § 3553(a)

### A.    The nature and circumstances of the offense and the history and characteristics of the defendant

Although this offense is serious, the nature of the offense and the history and characteristics of the Defendant weigh heavily in favor of a probationary sentence.

#### (1)    The Defendant's personal history and characteristics.

Mr. Keefover has been a law abiding member of society both prior to and since this offense.  He is currently engaged, and living at home with his parents.  If sentenced to probation, he has arranged full-time employment at a local Honda dealership.

#### (2)    The nature and circumstances of the offense.

As outlined above, Mr. Keefover downloaded the images as a teenager, and his possession of them on a military installation, while knowing, was inadvertent.

### B.    The purposes of sentencing

Section 3553(a)(2) lists four purposes of sentencing, which can be summarized as:

(1) just punishment;

(2) deterrence;

(3) protection of the public; and

(4) rehabilitation.

Under the parsimony principal, the sentence in this case should be the minimum

necessary to accomplish the listed purposes.  In this case, there is no need to impose a sentence of incarceration.  Each of the purposes listed by Section 3553(a)(2) would be achieved by imposing a sentence of probation.

### (1)    Just punishment

Mr. Keefover admits that he participated in a serious offense and understands and accepts that he will be convicted of a federal felony.  However, there is no evidence, whatsoever, that indicates that Mr. Keefover ever presented or currently presents any danger of inappropriate sexual conduct.  He should be punished for the youthful indiscretion he committed, not the assumptions inherent in the sentencing guidelines applicable to the offense charged, for which there appears to be no evidentiary support.

### (2)    Deterrence

The sentence imposed should be tailored to deter Mr. Keefover from continuing to use file sharing services of dubious reliability in the future. With regards to the issue of downloading child pornography, he poses little or no threat to recidivate.

### (3)    Protection of the public

No additional protection is offered the public by the imposition of a prison sentence on Mr. Keefover.

### (4)    Rehabilitation

Mr. Keefover has led a decent, law-abiding life.  He does not abuse drugs or otherwise violate the law.  He needs the opportunity to continue his personal development.

### C.    The kinds of sentences available

There is a 10 year statutory maximum term of imprisonment.  There is no mandatory

minimum.

**D.    The Sentencing Guidelines and Guideline policy statements.**

**(1)  The Advisory Guideline Range as Calculated by the PSR**

Pursuant to *Booker*, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Based upon the alleged age of the minors depicted, the use of a computer, and the number of images alleged, the PSR suggests that the advisory United States Sentencing Guidelines range of imprisonment is 37-46 months.[2]  This guidelines calculation is based upon a total offense level of 21 and a criminal history category of 1.

**(2)  Objections to the PSR's Advisory Guideline Range Calculation**

**i. The government cannot demonstrate that the Defendant warrants a two-level enhancement pursuant to U.S.S.G. §3G2.2(b)(2).**

U.S.S.G. §3G2.2(b)(2) warrants a two-level increase in the Defendant's guidelines level, if the government can prove that the images depicted involved a minor who had not yet reached the age of twelve years.  The Defendant objects to this two-level increase, if it is based upon any estimation of the age of the subjects of the photographs, based upon those visual depictions.

Determining the age of children depicted by viewing downloaded images is a speculative and inaccurate practice, at best.  For years, individuals in law enforcement have estimated age by viewing the level of development of the sexual organs of the minors in the photographs.  This practice utilizes something known as the "Tanner Scale" to

identify when an image supposedly depicts a prepubescent minor.

The creators of the "Tanner Scale" have specifically rejected its use in this manner, in comments published in the Journal of Pediatrics.[3]  Notwithstanding this repudiation of their methods, investigators continue to offer this testimony.

---

[2]     PSR at ¶ 57

[3]     Misuse of Tanner Puberty Stages to Estimate Chronological Age
        PEDIATRICS Vol. 102 No. 6  December 1998, pp. 1494

        To the Editor;

        One of us has been involved as an expert in several US federal cases of possession of alleged child pornography, in which seized materials (videos, photographs, computer downloads) were used as evidence against individuals identified in "sting" operations, wherein government agents take over pornographic businesses.  In these cases, the staging of sexual maturation (Tanner stage) has been used not to stage maturation, but to estimate probable chronological age.  ***This is a wholly illegitimate use of Tanner staging: no equations exist estimating age from stage, and even if they did, the degree of unreliability in the staging the independent variable would introduce large errors into the estimation of age, the dependent variable.  Furthermore, the unreliability of the stage rating is increased to an unknown degree by improperly performed staging, that is, not at a clinical examination but through nonstandardized and, thus, unsuitable photographs.***

        Therefore, we wish to caution pediatricians and other physicians to refrain from providing "expert" testimony as to chronological age based on Tanner staging, which was designed for estimating development or physiologic age for medical, educational, and sports purposes, in other words, identifying early and late maturers.  The method is appropriate for this, provided chronologic age is known.  ***It is not designed for estimating chronologic age and, therefore, not properly used for this purpose.*** (emphasis supplied)

        Arlan L. Rosenbloom, MD
        Department of Pediatrics
        University of Florida College of Medicine
        Gainesville, FL 32610-0296

        James Tanner, MD, PhD
        University of London
        London, England

Even law enforcement publications raise serious concerns about guesstimating the age of minors depicted in downloaded images.[4]  In light of the questionable scientific basis of the method, these guesses are likely not admissible.[5]

If any subject of the downloaded photographs is a positively identified individual, whose age is known to be under the age of 12 years, the Defendant would withdraw this objection.  Otherwise, the method used to guess at whether any of the minors depicted is "prepubescent" is simply too speculative to support a two-level increase in Mr. Keefover's guidelines range.

  **ii.** **The Defendant is alleged to have downloaded only nine (9) pornographic images depicting minors, and should not be assessed a two-level enhancement pursuant to U.S.S.G. §3G2.2(b)(7)(D).**

The Indictment alleges that the Defendant possessed nine (9) files depicting minors engaged is explicit sexual activity, and specifically identifies those nine (9) files.  This is the offense conduct that the Defendant admitted.

While the factual basis for Mr. Keefover's guilty plea states that he downloaded pornography "…on at least ten different occasions", it makes clear that not all of the pornography he downloaded was child pornography.  Some of the files listed in the PSR may depict minors, or, based on the descriptions provided, they may depict adult females

---

4   *DEFINING CHILD PORNOGRAPHY: LAW ENFORCEMENT DILEMMAS IN INVESTIGATIONS OF INTERNET CHILD PORNOGRAPHY POSSESSION*   Wells, Finkelhor, Wolak & Mitchell
Police Practices and Research, Vol. 8, No. 3, July 2007, at pp.278

5   *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)

who appear to be younger than they are.  As outlined above, the age of minors cannot be accurately estimated from downloaded images.  This is particularly true of older "pubescent" teens.

The Defendant should not receive a two-level upward adjustment pursuant to U.S.S.G. §3G2.2(b)(7)(D).

### iii.  The Defendant should not be subject to the Sex Offender Registration and Notification Act (SORNA), provisions of the Adam Walsh Act.

Paragraph 63 of the PSR states that this offense "…may qualify the defendant for classification as a sexual offender pursuant to F.S. 943.0435 and/or as a sex offender pursuant to the Sex Offender Registration and Notification Act …with the resulting registration and notification requirements."  The Defendant will not be residing in Florida after he is sentenced, and so he will not be subject to F.S. 943.0435.  He further requests that he not be made subject to the terms of SORNA.

The Constitutionality of SORNA has come under serious question in a series of recent cases in both the Southern and Middle Districts of Florida.  Two District Judges have now held that there is no identifiable nexus between the provisions of SORNA and interstate commerce, and ruled that the Act therefore exceeds federal authority.[6]  The Eleventh Circuit has also criticized SORNA, finding its provisions to be vague and

---

6       *United States v. Powers,* 544 F. Supp. 2d 1331 (MDFL, 2008)
        *United States v. Myers,* 2008 U.S. Dist. LEXIS 99384 (SDFL, 2008)
        *United States v. Hilton-Thomas,* 2009 U.S. Dist. LEXIS 1929 (SDFL, 2009)

ambiguous.[7]

Especially in this case, where the PSR suggests that the Defendant only *may* be subject to the provisions of SORNA, and where Mr. Keefover's offense conduct and personal history both indicate that it is unlikely that he will recidivate, it would be unreasonable to impose SORNA's registration and notification requirements on the Defendant, especially in light of its questionable validity.

## V.      Conclusion

Chase Keefover stands before the Court as someone who committed a serious felony offense, but under circumstances where his offense appears to be more in the nature of an exercise of incredibly poor judgment by a teenager, rather than the calculated victimization of children by a sex offender.  Mr. Keefover has no significant prior criminal history, and the greater weight of the evidence supports a finding by this Court, that he does not require incarceration, as a deterrent to future offense conduct.

In every case, "…a range of reasonable sentences exists from which the district court may choose."[8]  Application of the principals enunciated in 18 U.S.C. 3553(a), dictate that, in this case, a reasonable sentence would be one of probation or supervised release. This sentence will constitute fair and just punishment, commensurate with the offense conduct and Mr. Keefover's history and background.

---

7       *United States v. Mason,* 2009 U.S. App. LEXIS 591 (CCA11, January 14, 2009)

8       *United States v. Herrera-Aguilar*, 199 Fed Appx. 818 (CCA11, 2006)

Respectfully submitted, this 19th day of January, 2009.

**SMITH and HAINE, P.A.**
Attorneys at Law

/s/ *A. RUSSELL SMITH*

**A. RUSSELL SMITH**, Esquire
Florida Bar No.:     296880
**ROSS S. HAINE, II**, Esquire
Florida Bar No.:     0135781
519 Newnan Street
Jacksonville, Florida 32202
(904) 355-5633
*Attorneys for the Defendant*

I HEREBY CERTIFY that a copy of the above and foregoing has been furnished to Ron Desantis, Assistant U.S. Attorney, by CMECF, this date.

/s/ *A. RUSSELL SMITH*

Attorney